# United States Court of Appeals
## For the First Circuit

No. 03-2461

UNITED STATES OF AMERICA,

Appellee,

v.

ANTHONY CIAMPI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya, Circuit Judge,

and Cyr, Senior Circuit Judge.

Thomas J. Butters, for appellant.
Cynthia A. Young, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

August 17, 2005

**CYR, <u>Senior Circuit Judge</u>.**  Anthony Ciampi appeals from the district court order which denied and dismissed his petition for habeas corpus, filed pursuant to 28 U.S.C. § 2255, in which he asserts that he never knowingly and voluntarily waived the right to appeal or collaterally challenge his illegal gambling conviction by entering into a written plea agreement with the government.  As there was no error, we affirm.

<strong>I</strong>

<strong><u>BACKGROUND</u></strong>

A twenty-three count indictment was returned against Ciampi in April 1997 relating to his involvement in an illegal gambling operation.  <u>See</u> 18 U.S.C. § 1955.  Subsequently, Ciampi was convicted by the jury on the § 1955 count, acquitted of four other counts, and no verdicts were reached on the remaining eighteen counts.  Ciampi's original trial attorney withdrew his appearance, and the district court appointed new counsel pending a retrial on the latter counts.  The government ultimately proposed a plea agreement, whereby Ciampi would plead guilty to two counts upon which the jury had reached no verdict (<u>viz.</u>, conspiracy to commit murder in aid of racketeering and attempting to commit an assaultive crime with a dangerous weapon, <u>id.</u> §§ 1959(a) & 2).

At the plea hearing conducted on November 1, 1999, Ciampi was provided with a copy of the plea agreement, and the terms of the agreement were recited by government counsel, including the

provision waiving any right to appeal or collaterally challenge either the conviction or the sentence. The district court asked whether Ciampi understood the terms of the agreement, and Ciampi replied in the affirmative. Whereupon the district court, on March 1, 2000, imposed a 216-month prison term pursuant to the plea agreement. Judgment was entered on March 8.

On February 20, 2001, Ciampi submitted a pro se habeas corpus petition in the federal district court, pursuant to 28 U.S.C. § 2255, claiming, inter alia,[1] that the district court had failed to inform him during the November 1999 plea colloquy that he was waiving his right to appeal, as well as any right to assert a collateral challenge.

On October 31, 2002, Ciampi, through counsel, submitted an amended § 2255 petition, which asserted several additional claims, including: (i) counsel rendered ineffective assistance by failing to appeal his conviction on the § 1955 gambling count; and (ii) the government adduced insufficient evidence that he violated § 1955. The district court granted the amendment.

---

[1]Additional arguments, which Ciampi no longer presses, were as follows: (i) the government concealed evidence from the district court which demonstrated that the government offered Ciampi the plea agreement to cover up government officials' corrupt involvement with organized crime figures in the gambling enterprise and the murders; (ii) his original counsel rendered ineffective assistance by failing to investigate these false representations by the government; and (iii) the plea agreement constituted an invalid contract since Ciampi received no consideration (viz., benefit) from the agreement.

On September 19, 2003, in an unpublished opinion, the district court denied the amended § 2255 petition, holding that the new claims asserted in the amended petition – filed some 18 months after the final judgment of conviction was entered under § 1955 – were time-barred by operation of the one-year statute of limitations prescribed by section 2255.  Further, the court determined that these new claims could not "relate back" to the timely pro se petition filed by Ciampi in February 2001, see Fed. R. Civ. P. 15(c), in that (i) the ineffective assistance claim concerned counsel's alleged failure to advise Ciampi to appeal following his § 1955 conviction, whereas the pro se petition addressed a totally different time in the litigation, viz., the ineffective assistance of counsel in persuading Ciampi to accept the government's plea agreement offer; and (ii) Ciampi's pro se petition made no mention of the insufficiency of the evidence supporting the § 1955 conviction. Consequently, the district court ruled that the only preserved claim concerned whether Ciampi had knowingly and voluntarily waived his rights to appeal and to assert a collateral challenge by virtue of his acceptance of the plea agreement, viz., whether the district court conducted an adequate inquiry during the plea colloquy as to whether Ciampi understood the waiver provision.

Alternatively, the district court denied the timely claims, as well as the time-barred claims, on the merits.  As for

the waiver claim, the court ruled that even though the district court had not specifically asked Ciampi during the plea hearing whether he understood the consequences of waiving his rights to appeal and to assert collateral challenges, the attendant circumstances nonetheless demonstrated that Ciampi had fully understood the waiver. Finally, after obtaining a certificate of appealability, Ciampi challenges the dismissal of his petition.

## II

## DISCUSSION

### A.   The Limitations Period and the "Relation Back" Argument

First, Ciampi contends that the district court erred in dismissing, as time-barred, the claims asserted in his amended petition that counsel rendered ineffective assistance <u>during the plea process</u> by failing to discuss with him (i) that acceptance of the plea agreement would constitute a waiver of his appeal and habeas corpus rights, and (ii) whether or not he had a viable appeal from his gambling conviction. Ciampi contends that since the <u>pro se</u> petition stated that "the waiver in the plea agreement was not fully explained to him," and inasmuch as <u>pro</u> se petitions are to be liberally construed, this court should supply the omitted phrase "by the court <u>or his attorney</u>" at the end of that sentence. Ciampi maintains that once we import, from his <u>pro se</u> petition, this ineffective assistance claim into his amended petition, it follows that his related argument that he had a meritorious and

-5-

potentially successful appeal from his gambling conviction –
including subordinate issues such as (i) whether the government
established all elements of a section 1955 offense, and (ii)
whether his counsel properly preserved or waived the insufficiency
challenge for appeal – must necessarily be addressed as part of his
amended petition.  We disagree.

The district court ruling that the pertinent new claims
in Ciampi's amended October 2002 petition do not relate back to the
timely pro se petition filed in February 2001 is reviewed only for
abuse of discretion.  See Young v. Lepone, 305 F.3d 1, 14 (1st Cir.
2002).[2]

Federal Rule of Civil Procedure 15 governs amendments to
habeas petitions in a § 2255 proceeding.  See, e.g., United States
v. Duffus, 174 F.3d 333, 336 (3d Cir. 1999); see also United States
v. Hicks, 283 F.3d 380, 386 (D.C. Cir. 2002), thereby permitting
otherwise untimely pleading amendments to "relate back" to the date
of the timely-filed original pleading provided the claim asserted
in the amended plea "arose out of the conduct, transaction, or
occurrence set forth or attempted to be set forth in the original

_____

[2]The Antiterrorism and Effective Death Penalty Act (AEDPA)
requires that a federal prisoner submit a habeas corpus petition
within one year from the date upon which the conviction becomes
"final".  28 U.S.C. § 2255.  As Ciampi failed to appeal from the
gambling conviction, the one-year period commenced in March 2000,
when the court entered judgment on the plea agreement.  See Derman
v. United States, 298 F.3d 34, 41 (1st Cir. 2002).  Thus, the
February 2001 pro se petition was timely, whereas the amended
petition of October 2002 was not.

-6-

pleading." Fed. R. Civ. P. 15(c)(2)(emphasis added). However, in the habeas corpus context, the Rule 15 "relation back" provision is to be strictly construed, in light of "'Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them].'" Mayle v. Felix, ___ U.S. ___, 125 S. Ct. 2562, 2570 (2005) (citation omitted); see United States v. Espinoza-Saenz, 235 F.3d 501, 505 (10th Cir. 2000) (noting that an overly broad interpretation of the Rule 15 term "occurrence" in the context of habeas proceedings "would be tantamount to judicial rescission of AEDPA's statute of limitations period"). Accordingly, amended habeas corpus claims generally must arise from the "same core facts," and not depend upon events which are separate both in time and type from the events upon which the original claims depended. Mayle, 125 S. Ct. at 2570 (disallowing relation back, and holding that claimed violations in admission of out-of-court statements were distinct under Rule 15, inasmuch as one involved a Fifth Amendment challenge to the defendant's own pretrial statements, and the other involved a Confrontation Clause challenge to videotaped witness testimony).

Under this stringent standard, therefore, the district court did not remotely abuse its discretion in determining that the amended Ciampi claims did not relate back to the pro se petition. Ciampi erroneously posits that it is sufficient under Rule 15 that both sets of claims generally related to his "understanding" of his

appellate waiver.  Instead, however, Ciampi's pro se petition restricts its focus to whether the district court failed to make an adequate inquiry at the plea hearing – pursuant to its responsibility under Federal Rule of Criminal Procedure 11(c)(6) – as to whether Ciampi understood that he was waiving his rights to appeal or to collaterally challenge his gambling conviction.  In pertinent part, the Addendum to the Ciampi pro se petition states:

> Can the court accept such a waiver without informing the defendant in detail that such waiver would prevent the defendant from arguing any constitutional or jurisdictional defect found within the indictment?  To compound [petitioner's] dilemma, he assumed the right to appeal was standard for all defendant(s), and that (sic) the waiver in the plea agreement was not fully explained to him.

(Emphasis added.)  Even if it were to be liberally construed, see, e.g., Estelle v. Gamble, 429 U.S. 97, 106 (1976) (noting that pro se habeas petitions normally should be construed liberally in petitioner's favor); Voravongsa v. A.T. Wall, 349 F.3d 1, 8 (1st Cir. 2003), cert. denied, 541 U.S. 963 (2004), this quoted language speaks only of the court, and makes no mention of Ciampi's attorney. Moreover, Ciampi asserted another ineffective assistance claim against his attorney in his pro se petition, alleging that his counsel failed to investigate the misrepresentations allegedly made by the government in the indictment, which Ciampi contends would have unearthed evidence of governmental involvement in the illegal gambling enterprise.  Not only does this suggest that

-8-

Ciampi – acting pro se – adequately understood the required elements of an "ineffective assistance" claim, but it makes his omission of any similar claim – that his attorney failed to explain the appellate waiver to him – glaring indeed. As the Supreme Court recently made crystal clear, see Mayle, 125 S. Ct. at 2570, a petitioner does not satisfy the Rule 15 "relation back" standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance. See, e.g., Davenport v. United States, 217 F.3d 1341, 1346 (11th Cir. 2000); Duffus, 174 F.3d at 337.[3]

Accordingly, the district court did not abuse its discretion in dismissing the above-mentioned claims from the amended petition, and the only habeas claim properly before us on appeal is the claim that the district court failed to comply with Rule 11(c) during the plea hearing.

## B. Waiver of Right of Appeal and Collateral Challenge

Ciampi argues that the district court violated Rule

---

[3]Ciampi contends that the government did not establish that his involvement in the illegal gambling enterprise was anything more than merely coincidental, hence failed to establish that the enterprise "involve[d] five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business." 18 U.S.C. § 1955(b)(1)(ii). Further muddying the waters, Ciampi's trial counsel failed to preserve the insufficiency claim for appeal by conceding in open court that "I cannot quarrel with the sufficiency of the evidence." As we conclude that Ciampi's claims do not relate back under Rule 15(c), however, we need not wade into these matters.

11(c), in that it failed to specifically inquire during the plea colloquy whether he understood that he was waiving his right to appeal or to collaterally challenge the gambling conviction. Ciampi relies upon United States v. Teeter, 257 F.3d 14, 24 (1st Cir. 2001), where we asserted that such a waiver-of-appeal provision normally would not be enforceable unless (i) "the written plea agreement signed by the defendant contains a clear statement elucidating the waiver and delineating its scope;" (ii) "the court's interrogation [during the plea hearing] suffices to ensure that the defendant freely and intelligently agreed to waive her right to appeal her forthcoming sentence," and (iii) the waiver otherwise constitutes a "miscarriage of justice." Id. at 24-25; see Fed. R. Crim. P. 11(b)(1)(N) (noting that court must "address the defendant personally in open court . . . [and] inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence"). The Ciampi contention fails.

First, it is undisputed that paragraph 6 of the Ciampi plea agreement contains a plain expression of the nature of the waiver, and that paragraph 4 likewise clearly states its scope: "This disposition encompasses both the counts of the Indictment and the Information to which Defendant is pleading guilty, and the count of the Indictment on which the jury found Defendant guilty."

(Emphasis added.)  Ciampi was given a copy of the plea agreement at the plea hearing, and his counsel signed an acknowledgment that Ciampi had read and understood its provisions.  See Teeter, 257 F.3d at 26 (noting that attorney acknowledgments "furnish prima facie evidence of the appellant's knowledge and volition").

Second, turning to the evidence contained in the transcript of the plea colloquy, the government recited in open court all the terms of the plea agreement, including the waiver of appellate and habeas rights.  Immediately thereafter the district court addressed Ciampi and asked "[A]re those the terms of your agreement with the government as you understand them?"  Ciampi answered "yes."  During the hearing, the court had repeatedly told Ciampi that he could consult with his attorney if he did not understand anything the court said.  Although it is true that the district court never asked Ciampi specifically or directly: "Do you understand the provision waiving your appellate and habeas rights," we have prescribed no "mandatory language for such an inquiry because the circumstances will vary from case to case, from defendant to defendant, and from plea agreement to plea agreement. We caution only that the court's interrogation should be specific enough to confirm the defendant's understanding of the waiver and her acquiescence in the relinquishment of rights that it betokens." Id. at 24 n.7.  The temporal proximity of the government's open-court recitation and the district court's omnibus inquiry satisfy

-11-

us that Ciampi was not unduly prejudiced by the district court's failure to repeat each of the provisions just enumerated by the government.

Third, Teeter is legally distinguishable on one especially significant front. Rule 11(c) was last amended in 1999, following the Ciampi plea hearing in this case, whereas the Teeter case dealt with the amended rule. Prior to the 1999 amendment, some courts had approved waivers even though the district court had not engaged in the sort of specific questioning regarding the waiver now explicitly required under the new Rule 11(c). See id. at 24 (noting that 1999 amendment – "which was in force when Teeter changed her plea – alters the decisional calculus") (citing United States v. Wenger, 58 F.3d 280, 282 (7th Cir. 1995) (upholding a waiver despite the absence of specific questioning by the court)). Here, the government's recitation of the terms of the plea agreement, followed immediately by the district court's inquiry of Ciampi as to whether he understood the import of each of those terms, arguably satisfied the less specific, pre-1999 version of Rule 11.[4]

---

[4]By distinguishing Teeter in this respect, we in no sense sanction any diminution in the district court's important responsibility under amended Rule 11(c), to take all appropriate measures to ensure that the defendant is knowingly and voluntarily waiving his rights of appeal, and a direct and particularized inquiry plainly remains among the most efficacious and straightforward methods to that end. Thus, wherever practicable, it should remain the paradigm.

Fourth, it is noteworthy that the district court said nothing else during the plea hearing which remotely would have negated or counteracted its inquiry regarding Ciampi's understanding of the waiver, or misled Ciampi into any false belief that he was retaining either his right to appeal or to assert a collateral challenge to the gambling conviction. Cf. Teeter, 257 F.3d at 26-27 (finding Rule 11(c) violation, noting that in addition to absence of direct inquiry, the court later confused defendant by asking: "[D]o you also understand that both you and the government will have a right to appeal any sentence I impose?").

Finally, our holding does not rest exclusively upon either the written terms of the plea agreement or the precise words uttered during the plea colloquy. The ultimate test for determining Rule 11(c) compliance continues to be whether, given the totality of the circumstances, it fairly can be said that the defendant knowingly and voluntarily waived his right to appeal. See Teeter, 257 F.3d at 24 (noting that the district court's failure to make particularized inquiry regarding waiver of rights of appeal, "will constitute error and may serve to invalidate the waiver, depending upon what the record shows as to the defendants' knowledge (that is, whether the defendant, notwithstanding the absence of a particularized inquiry, understood the full significance of the waiver) and the existence vel non of

-13-

prejudice"). Here, we are well satisfied that the totality of the circumstances afford no good reason to suppose that Ciampi realistically could have expected that the government would enter into a plea agreement in which it dropped many of the serious counts remaining for retrial, arranged for a reduction in his potential sentence from 30 to 18 years, but then left him the prerogative to appeal and/or collaterally challenge his gambling conviction. See id. at 22 ("Allowing a criminal defendant to agree to a waiver of appeal gives her an additional bargaining chip in negotiations with the prosecution; she may, for example, be able to exchange this waiver for the government's assent to the dismissal of other charges."). Far from creating a "miscarriage of justice," id. at 25, the plea agreement in this case plainly conferred upon Ciampi a considerable benefit and an opportunity to escape the perils of a retrial, and Ciampi would have been naive indeed to suppose that he could have his cake (viz., significantly reduced jail time) and eat it too (viz., an appeal).

As the record on appeal, viewed in its entirely, amply persuades us that Ciampi understood the nature and scope of the waiver of appeal rights prescribed in the plea agreement, the district court correctly rejected his claim, and dismissed the amended habeas petition.

**Affirmed**.